**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **EDGARD DE LEON-SERRANO, et al.**<br>Plaintiffs<br><br>v.<br><br>**NORTHWESTERN SELECTA, INC.**<br>Defendant | **Civil No. 13-1474 (DRD)** |

**OPINION & ORDER**

Plaintiff Edgard De Leon-Serrano worked for Northwestern Selecta, Inc. ("Defendant") from June 14, 2010 until his resignation on February 15, 2013. At all relevant times, Plaintiff De León-Serrano was married to Lymari Muñoz-Figueroa and had two dependent children A.E.D.M. and E.J.D.M. (collectively "Plaintiffs").

In addition to being Plaintiff De-León-Serrano's former employer, Defendant was also the plan administrator of a group health plan offered to its employees, their spouses, and dependent children. Consequently, pursuant to the provisions of the Employment Retirement Income Security Act ("ERISA"), see 29 U.S.C. § 1001 *et seq.*, Defendant has certain notification duties towards Plaintiffs. However, Plaintiffs aver that Defendant failed to comply with all of these duties. Defendant's noncompliance purportedly impaired Plaintiffs' access to medical services. Accordingly, Plaintiffs are suing for reimbursement of medical expenses, statutory penalties, attorney's fees, costs, and any further relief the Court deems necessary.

After the completion of discovery on this notification issue, both sides filed a motion for summary judgment. For the reasons set forth below, the Court hereby **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion.

## I.      THE FACTS

The particulars of the instant case are straightforward.  Defendant was Plaintiff De León-Serrano's employer from June 14, 2010 until his resignation on February 15, 2013.  Docket No. 34-1, ¶ 2 (admitted).  At all relevant times, Defendant maintained a group health plan for its employees by way of a private health insurance agency.  Id. at ¶ 1 (admitted).  Plaintiff De León-Serrano became a participant in the group health plan on October 1, 2011, which was over a year after he was hired.  Id. at ¶ 5 (admitted).  Moreover, Plaintiff De León-Serrano's wife and two dependent children each became beneficiaries of the group health plan on that same date, October 1, 2011.  Id. at ¶¶ 6-7 (admitted).

Pursuant to the terms of ERISA, participants and beneficiaries of a group health plan have the right to continuing coverage for a limited time after the occurrence of certain "qualifying events."  As shall be alluded to, an employee's resignation falls under this "qualifying events" umbrella.  Consequently, ERISA mandates that employers and health-plan administrators provide adequate notification of these rights both during employment and after the qualifying event.  The instant case is simplified as Defendant is both the employer and plan administrator in the instant case.  Id. at ¶ 3 (admitted).  Plaintiffs aver that Defendant infringed upon these notification duties.

Once Plaintiff De León-Serrano began his employment, Defendant provided him with an employee handbook that included a brief introduction to the group health plan.  See Id. at ¶ 8 (admitted); and Docket No. 45-1.  On February 21, 2013, about a week after Plaintiff De León-Serrano's resignation, Defendant purportedly sent Plaintiffs a notification letter of their rights to continuing coverage.  Plaintiffs challenge the

timeliness requirements of these notifications as well as their inadequacy in content.  In order to properly assess whether Defendant complied with these duties, the Court must first delineate between what is required by the law and what is not.

## II.    THE LAW

### A. Notification Obligations

ERISA imposes several notification requirements on both the employer and plan administrator.  However, the Court need not delve into the distinctions between the two as Defendant is both Plaintiffs' employer and plan administrator.  Id. at ¶ 3 (admitted). Therefore, the upcoming legal provisions may simply be read to impose duties upon Defendant.

The primary source of applicable law is 29 U.S.C. § 1166, which calls for two notification duties to be levied upon Defendant.  The first notification requirement is set forth below:

> Notice requirements
> (a) In general
> **In accordance with regulations prescribed by the Secretary--**
> (1) the  group  health  plan  **shall**  provide,  at  the  time  of  commencement  of coverage under the plan, **written notice** to each covered employee and spouse of the employee (if any) of the rights provided under this subsection
>  . . .
>
> (emphasis provided).

Pursuant to the aforementioned statute, the Court reads the same in conjunction with the "regulations prescribed by the Secretary":

> General notice of continuation coverage.
> (a) General. Pursuant to [29 U.S.C. § 1166(a)(1)] . . . the administrator of a group health plan . . . **shall provide, in accordance with this section, written notice to each covered employee and spouse of the covered employee (if any) of the right to continuation coverage provided under the plan.**
>  . . .

(c) **Content of notice**. The notice required by paragraph (a) of this section shall be written in a manner calculated to be understood by the average plan participant **and shall contain the following information**:

(1) The name of the plan under which continuation coverage is available, and the name, address and telephone number of a party or parties from whom additional information about the plan and continuation coverage can be obtained;

(2) A general description of the continuation coverage under the plan, including identification of the classes of individuals who may become qualified beneficiaries, the types of qualifying events that may give rise to the right to continuation coverage, the obligation of the employer to notify the plan administrator of the occurrence of certain qualifying events, the maximum period for which continuation coverage may be available, when and under what circumstances continuation coverage may be extended beyond the applicable maximum period, and the plan's requirements applicable to the payment of premiums for continuation coverage;

(3) An explanation of the plan's requirements regarding the responsibility of a qualified beneficiary to notify the administrator of a qualifying event that is a divorce, legal separation, or a child's ceasing to be a dependent under the terms of the plan, and a description of the plan's procedures for providing such notice;

(4) An explanation of the plan's requirements regarding the responsibility of qualified beneficiaries who are receiving continuation coverage to provide notice to the administrator of a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.), that a qualified beneficiary is disabled, and a description of the plan's procedures for providing such notice;

(5) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(6) A statement that the notice does not fully describe continuation coverage or other rights under the plan and that more complete information regarding such rights is available from the plan administrator and in the plan's SPD.

. . .

(emphasis provided).

29 C.F.R. § 2590.606-1

Plaintiffs purport that Defendant did not comply with this first notification requirement.

Prior to ascertaining the requisites of the second notification, the Court must pause and explain the circumstances that activate such an obligation.  ERISA defines certain "qualifying events" that trigger the second notification requirements.  All of these "qualifying events" are numbered in 29 U.S.C. § 1163:

For purposes of this part, the term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation

coverage required under this part, would result in the loss of coverage of a qualified beneficiary:

(1) The death of the covered employee.

**(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.**

(3) The divorce or legal separation of the covered employee from the employee's spouse.

(4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C.A. § 1395 et seq.].

(5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.

(6) A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

 . . .

(emphasis provided).

The Court notes—and Defendant does not dispute—that Plaintiff De León-Serrano's resignation falls under the second subsection.  See <u>Gaskell v. Harvard Co-op. Soc.</u>, 3 F.3d 495 (1st Cir. 1993); <u>Fama v. Design Assistance Corp.</u>, 520 Fed.Appx. 119, 122 (3d Cir. 2013) (unpublished); <u>Mlsna v. Unitel Communications, Inc.</u>, 41 F.3d 1124, 1128 (7th Cir. 1994); <u>Branch v. G. Bernd Co.</u>, 955 F.2d 1574, 1577 (11th Cir. 1992).  Therefore, Defendant was under the legal obligation to effectuate the second notification.

The second notification requirements under 29 U.S.C. § 1166 read as follows:

Notice requirements
(a) In general
**In accordance with regulations prescribed by the Secretary--**
 . . .
(4) the administrator **shall** notify--
(A) in the case of a qualifying event described in paragraph . . .  (2) . . . of section 1163 of this title, any qualified beneficiary with respect to such event . . . of such beneficiary's rights under this subsection.

Once again, however, this portion of the statute should be read in conjunction with the "regulations prescribed by the Secretary."  The number of requirements for the second notification is vast:

Notice requirements for plan administrators

(a) General. Pursuant to [29 U.S.C. § 1166(a)(4)] . . . the administrator of a group health plan . . . **shall provide, in accordance with this section, notice to each qualified beneficiary of the qualified beneficiary's rights to continuation coverage under the plan.**

 . . .

(4) The notice . . . shall be written in a manner calculated to be understood by the average plan participant and **shall contain the following information**:

(i) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;

(ii) Identification of the qualifying event;

(iii) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(iv) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v) An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii) A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii) An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the length of any such extension;

(x) In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the

SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii) A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

. . .

(emphasis provided).

29 C.F.R. § 2590.606-4

Plaintiffs contend that Defendant also failed to adequately comply with these second notification requirements.

Should the Court determine that Defendant failed to comply with the mandates of these provisions, Defendant is subject to the penalties of 29 U.S.C. § 1132:

Civil enforcement
(a) Persons empowered to bring a civil action
A civil action may be brought--
    (1) by a participant or beneficiary--
        (A) for the relief provided for in subsection (c) of this section,
. . .

(c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form
    (1) Any administrator . . . **who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title** . . . with respect to a participant or beneficiary . . . **may in the court's discretion** be personally liable to such participant or beneficiary in the amount of up to [$110][1] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. . . .

(emphasis provided).

---

[1] For the sake of clarity, the Court inserts the amount authorized by 29 C.F.R. § 2575.502c-1.  See Tetreault v. Reliance Standard Life Ins. Co., 769 F.3d 49, 59 n. 6 (1st Cir. 2014).

Defendant attempts to do avoid many of the obligations of these various provisions of law by arguing that their use of the word "shall" should be read as "may." These attempts are unsuccessful.

### B. Thou *Shall* Notify Plan Participants of Continuing Coverage

Defendant makes the imaginative argument that the word "shall," which is riddled in the abovementioned statutes and regulations, should be read as "may." Accordingly, in an effort to defend against Plaintiffs' attacks, Defendant proposes that strict compliance with these provisions is unnecessary. It should be noted that, in other contexts, there have been occasions when courts have deemed "shall" to mean "may." See e.g. Cairo & F.R. Co. v. Hecht, 95 U.S. 168 (1877) ("As against the government, the word 'shall,' when used in statutes, is to be construed as 'may,' unless a contrary intention is manifest."); see also Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 n. 9 (1995) ("Though 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'" (citations omitted)). However, there is no doubt that the term "shall . . . normally creates an obligation impervious to judicial discretion." Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998) (citing Anderson v. Yungkau, 329 U.S. 482, 485 (1947) ("The word 'shall' is ordinarily 'The language of command'." (citing Escoe v. Zerbst, 295 U.S. 490, 493 (1935)))); see also A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 114 (2012) ("[W]hen the word shall can reasonably read as mandatory, it ought to be so read").

With respect to the challenged provisions, the Court finds no reason to sway from the ordinary definition of "shall."  The reason being is that substituting "may" for "shall" in any of the applicable legal provisions yields irrational results.  For example, 29 U.S.C. § 1166 would read:  "the group health plan [may] provide, at the time of commencement of coverage under the plan, written notice to each covered employee and spouse of the employee (if any) of the rights provided by this subsection," and "the administrator [may] notify . . . any qualified beneficiary . . . of such beneficiary's rights under this subsection. This hypothetical reading of the statute would allow an employer or a plan administrator to properly decide not to inform its employees or qualified beneficiaries of their rights to continuing coverage.  This proposition does not comport with the purposes of ERISA. Indeed, it would be puzzling for congress to go through the trouble of drafting this statute—and granting the secretary of labor with the authority to regulate compliance with the same—if an employer or plan administrator could simply decide not to follow through with its mandates (or suggestions, as Defendants would hold).  Such a proposition is especially troubling with regard to the qualified beneficiaries, who are inherently out of the loop as they do not even work for the employer that provides these health plans.

More absurdities occur when substituting "may" for "shall" in the applicable regulations.  29 C.F.R. §§ 2590.606-1(c) and 2590.606-4(b)(4) read as follows: "[t]he notice required . . . **shall** be written in a manner calculated to be understood by the average plan participant and **shall** contain the following information . . ." (emphasis provided).  As emphasized, the first sentence of these regulations uses the word "shall" twice.  Defendant relies heavily on the idea that all of this "following information" need

not be included in these notifications.  Hence, Defendant's argument hinges on the Court deeming the second "shall" to mean "may."  However, from a general perspective, the Court must recognize that it would be odd to deem the second "shall" to mean "may," while leaving the first "shall" as is.  Accordingly, the Court finds that the only way to properly consider Defendant's argument is to replace both.  The resulting language is silly: ""[t]he notice required . . . [may] be written in a manner calculated to be understood by the average plan participant . . ."  Read in this fashion, the employer and plan administrator may simply decide not to notify the plan participants in a manner that they would understand.  The Court is unpersuaded.  Such an illogical interpretation must cede to the reasonableness of the mandatory formulation.  Therefore, if the first "shall" cannot reasonably be read as "may," then why should the Court find that the second "shall" should be altered?  In the end, the Court rules that "shall" means "shall," which is an "obligation impervious to judicial discretion."  Lexecon, 523 U.S. at 35 (citing Anderson, 329 U.S. at 485).  Hence, Defendant is under the legal mandate of strictly complying with these provisions of law.

## III.    THE ANALYSIS

With these legal principles being the canvas, the Court may proceed to paint the analytical picture.  Although much has been written by the parties regarding the timing requirements of these two notifications, the Court need not enter this discussion.  The reason being is that the notifications—timely or not—did not contain all of the required content.

At the outset, Defendant is adamant that the employee handbook constitutes the first notification.  See Docket No. 55, p. 14; and Docket No. 55-3, ¶ 3.  However, the handbook contains only a single three-sentence paragraph, which fails miserably to comply with the provisions of 29 U.S.C. § 1166(a)(1) and 29 C.F.R. § 2590.606-1.  See Docket No. 45-1.[2]  For example, the purported notification does not include the "identification of the classes of individuals who may become qualified beneficiaries, the types of qualifying events that may give rise to the right to continuation coverage," nor "[a] statement that the notice does not fully describe continuation coverage or other rights under the plan."  See 29 C.F.R. § 2590.606-1(c).  There can be no doubt that the employee handbook—even if delivered in a timely fashion—does comply with the requisites of the first notification.  Further, as Defendant does not present any other argument or evidence that the first notification was made by some alternative means, the Court must rule in Plaintiffs' favor on this front.

The tide now turns to the sufficiency of the second notification.  Defendant places its faith into a letter that is dated February 21, 2013.  Nevertheless, even assuming that this letter was sent and received by Plaintiffs, the same is deficient as not all of the requisites of 29 U.S.C. § 1166(a)(4) and 29 C.F.R. § 2590.606-4 have been met.  See Docket No. 45-2.  For instance, the letter does not include "[a] statement that each

---

[2] The paragraph reads as follows:

**COBRA Plan**

This benefit allows an employee who has terminated his/her services with the company to maintain the medical insurance he/she had with the same (if it's the case), so long as he/she makes the total payments for the cost of the COBRA plan for a maximum period of 18 months, starting on the date of his/her termination o until the employee acquires another medical insurance, whichever is less. One of the principal benefits of the COBRA plan is to provide extension, during the time the employee makes the corresponding payments, to the price of a group plan and not to the price of a self-insured medical insurance. Those insured in the COBRA plan under treatment recognized by the COBRA law and who meet the 18 month coverage may qualify for a coverage extension.  (emphasis in original).

individual who is a qualified beneficiary . . . has an independent right to elect continuation coverage," "[a]n explanation of the consequences of failing to elect or waiving continuation coverage,"  nor "[a] statement that the notice does not fully describe continuation coverage or other rights under the plan."   See 29 C.F.R. § 2590.606-4(b)(4).  Hence, even if timely, the notification letter falls short of satisfying all of the applicable notification requirements.  Thus, the Court must rule in Plaintiffs' favor as Defendant does not provide any alternative argument or evidence as to some alternative means of notification.

Defendant's motion for summary judgment avers that there is "no genuine dispute as to any material fact" that Defendant adequately notified, or made a good faith attempt to adequately notify, Plaintiffs.  See Fed. R. Civ. P. 56(a).  However, even if this were true, Defendant is not "entitled to judgment as a matter of law" because the content of these notifications have been deemed deficient.  Id.  Hence, just as Plaintiffs allege in the complaint, Defendant has not complied with the notification provisions of the law.   Therefore, Defendant's motion for summary judgment shall be denied.   For these same reasons, Plaintiffs' motion for summary judgment shall be granted.

Having determined that Defendant failed to adequately notify Plaintiffs, the Court must now recur to the penalties of 29 U.S.C. §§ 1132(a)(1)(A) and 1132(c)(1).  Under these provisions, the Court has the discretion to adjudicate to Plaintiff any amount from $0 to $110 per violation.

## IV.    THE CASE *SHALL/MAY* CONTINUE

The resolution of these motions do not end all of the issues of the case at bar. The Court has established only that Defendant is liable for the statutory penalties of 29 U.S.C. §§ 1132(a)(1)(A) and 1132(c)(1).   Therefore, pending are Plaintiffs' claims for reimbursement of medical expenses, attorney's fees, costs, and any further relief that the Court deems just and proper.

The Court shall hold a status conference to determine how the remainder of the case at bar should proceed.   Particularly, as these matters have not been briefed, the Court wishes to discuss: (a) whether a jury is required to determine any factual aspect of this case[3], (b) whether Plaintiffs' claim for reimbursement of medical expenses preempted by the statutory penalties of ERISA, and (c) whether there is any need to continue discovery in the instant case.

## V.     THE CONCLUSION

For all of the abovementioned reasons, the Court hereby **GRANTS** Plaintiffs' motion for summary judgment and **DENIES** Defendant's motion for summary judgment. The Court rules that Defendant's notifications—timely or not—do not contain all of the legal requisites.   The Court hereby schedules a status conference to be held on **Thursday, April 9, 2015, at 5:00 p.m.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2015.

/s/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge

---

[3] The Court notes, however, that Plaintiffs' complaint does not include a jury demand.